FILED
United States Court of Appeals
Tenth Circuit

September 21, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JAMES LEE JAMERSON,

      Plaintiff - Appellant,

v.

JAMES HEIMGARTNER, et al.,

      Defendants - Appellees.

No. 18-3101
(D.C. No. 5:17-CV-03205-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **MATHESON**, Circuit Judges.
_____

Plaintiff James Lee Jamerson, a Kansas inmate proceeding pro se, brought this

civil rights action under 28 U.S.C. § 1983, alleging that Kansas Department of

Corrections ("KDOC") officials ("Defendants")[1] violated his constitutional rights under

the Eighth and Fourteenth Amendments. The District Court for the District of Kansas

dismissed his complaint, concluding that Mr. Jamerson's claims were either time-barred

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Mr. Jamerson named 12 KDOC employees (including one "John Doe") in his Complaint. ROA 5-7.

or did not state a claim for relief.  Mr. Jamerson appeals and requests permission to proceed *in forma pauperis* ("*ifp*").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, grant Mr. Jamerson's motion to proceed *ifp*, and remand for further proceedings consistent with this Order and Judgment.

## I.  BACKGROUND

In considering whether a complaint should be dismissed, courts accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff. *Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016).

### A. *Factual Background*

Mr. Jamerson's claims arise from events that began in 2010, when a KDOC official at the Lansing Correctional Facility ("LCF") informed Mr. Jamerson that an inmate wanted to kill him.  Three days later, the inmate and Mr. Jamerson "got into an altercation."  ROA at 6.  Both were placed into segregation.[2]

A few weeks later, a segregation review board held a hearing for Mr. Jamerson. During the hearing, the board informed him that he would be categorized as an "Other Security Risk" (OSR) for gang-related activity (also called "security target group"

---

[2] "Segregation" or "seg" refers to segregation from the rest of the prison population.  It is commonly called "solitary confinement."  *See Sandin v. Conner*, 515 U.S. 472, 485 (1995).  There are two types of segregation:  (1) disciplinary and (2) administrative.  *See Hewitt v. Helms*, 459 U.S. 460, 463 n.1 (1983).  "Confinement in disciplinary segregation is imposed when an inmate has been found to have committed a misconduct violation.  Administrative segregation may be imposed when an inmate poses a threat to security, when disciplinary charges are pending against an inmate, or when an inmate requires protection."  *Id.* (internal citation omitted).  The Kansas Supreme Court has explained:  "A curious result of the distinction is that punitive segregation is generally of a short duration, while administrative segregation may extend for periods of years, or even decades."  *Jamerson v. Heimgartner*, 372 P.3d 1236, 1238 (Kan. 2016).

("STG") activity), even though there was no evidence that he had any gang affiliation. *Id.* at 8. The officials explained that the OSR classification meant that Mr. Jamerson would spend the next four to five years in segregation. Mr. Jamerson alleged in his complaint that the KDOC officials did not place him in segregation because he was gang-affiliated. Rather, he alleged that at the review board meeting, the officials said they were placing him in segregation because they suspected him of moving contraband into the prison even though they had no proof of any such activity.

Shortly after the hearing, KDOC transferred Mr. Jamerson to the El Dorado Correctional Facility ("EDCF"). At EDCF, Mr. Jamerson spent the next three years in long-term administrative segregation despite his repeated declarations that he was not a gang member. Finally, on June 14, 2013, an EDCF staff member responded to Mr. Jamerson's complaints, stating that she "found no evidence to suggest that the June 19, 2010 incident was STG related nor was any information obtained from any other source which would substantiate that finding." *Id.*

B. ***Mr. Jamerson's First State Habeas Corpus Petition***

Based on the EDCF staff member's response, Mr. Jamerson filed a pro se petition for a writ of habeas corpus under Kansas law. The Butler County District Court summarily dismissed the petition, and the Kansas Court of Appeals affirmed the dismissal. *See Jamerson v. Heimgartner*, 326 P.3d 1091, 2014 WL 2871439 at *1 (Kan. Ct. App. 2014). On May 4, 2015, however, the Kansas Supreme Court granted Mr. Jamerson's petition for review. While the case was pending, the KDOC released Mr.

3

Jamerson from administrative segregation,[3] thereby depriving the Kansas Supreme Court of jurisdiction to order Mr. Jamerson's release from solitary confinement. *See Jamerson v. Heimgartner*, 372 P.3d 1236, 1238 (Kan. 2016). Although the Kansas Supreme Court acknowledged the case was moot, it nonetheless issued a unanimous opinion on June 17, 2016, stating that "the duration of segregated placement is a factor that courts must consider in determining whether an inmate has met the [standard] for demonstrating a liberty interest infraction" under the Fourteenth Amendment. *Id.* at 1241.

### C. *Mr. Jamerson's Second State Habeas Corpus Petition*

In a separate KDOC proceeding in April 2014, EDCF issued a disciplinary report against Mr. Jamerson for possession of dangerous contraband. The hearing officer sanctioned Mr. Jamerson with 30 days of disciplinary segregation, a $20 fine, 30 days of restricted privileges, and a loss of 90 days of earned good time credit. *Jamerson v. Heimgartner*, 350 P.3d 1138, 2015 WL 3875374 at *1 (Kan. Ct. App. 2015). After exhausting his administrative remedies, Mr. Jamerson filed another state habeas petition. The district court dismissed his petition. On June 12, 2015, the Kansas Court of Appeals reversed and remanded, stating "it appears that [Mr.] Jamerson could be entitled to relief for a violation of his due process right to call witnesses to testify at the disciplinary hearing." *Id.* at *4. Following the remand, KDOC and EDCF voluntarily dismissed the disciplinary action against Mr. Jamerson, restored his good time, and returned the $20 he

---

[3] It appears Mr. Jamerson was released sometime between June 20, 2014, when the Kansas Court of Appeals denied his habeas petition, *see Jamerson v. Heimgartner*, 326 P.3d 1091, 2014 WL 2871439 at *1 (Kan. Ct. App. 2014), and June 17, 2016, when the Kansas Supreme Court issued its decision in his case. *See Jamerson v. Heimgartner*, 372 P.3d 1236, 1238 (Kan. 2016).

had been docked. They did not compensate Mr. Jamerson for the time he spent in segregation or on privileged restriction.

D. *Mr. Jamerson's Civil Rights Suit*

Relying on these facts, Mr. Jamerson filed a three-count § 1983 complaint in the District Court for the District of Kansas on November 22, 2017. Count One alleged Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from the 2010 assault. Count Two alleged Defendants violated his Fourteenth Amendment right to due process when, following the 2010 segregation review board hearing, they placed him into segregation for more than three years based on unsubstantiated claims. Count Three alleged that, following the April 2014 EDCF hearing, Defendants violated his Eighth and Fourteenth Amendment rights when they subjected him to a "false conviction of a discip[l]inary action because prison officials wanted" him to look like he transferred dangerous contraband into the correctional facility. ROA at 11, 13.

After filing the initial complaint, Mr. Jamerson submitted five additional documents: (1) a "Supplemental Memorandum of Law in Support of Civil Rights Complaint" (citing Federal Rule of Civil Procedure 15(d)), (2) two motions to submit evidence, (3) a motion to appoint counsel, and (4) a motion to alter or amend his complaint to add a claim based on the Kansas tort of outrage.

The district court issued a sua sponte Memorandum and Order to Show Cause under 28 U.S.C. 1915A(b),[4] requiring Mr. Jamerson to explain why his claims were not time-barred under the applicable two-year statute of limitations. In the same order, the court denied Mr. Jamerson's motions to submit evidence and his motion to appoint counsel. The order did not address Mr. Jamerson's Supplemental Memorandum of Law or his motion to amend. In response to the order, Mr. Jamerson argued that his claims were timely and that he was entitled to equitable tolling under Kansas law. The district court dismissed his complaint and denied the pending motion to amend.

As to Count One, the district court held that the failure-to-protect claim accrued in June 2010, and "[n]othing in Plaintiff's response suggests that he was not aware of the assault on the day it occurred." ROA at 211. As to Counts Two and Three, the court stated:

> Even if Plaintiff could successfully argue for equitable tolling regarding his remaining claims, Plaintiff has failed to state a plausible claim for relief. Plaintiff seeks money damages for retaliation and for compensation for his time spent in segregation. Plaintiff alleges that after his state habeas action was remanded in June 2015, KDOC and EDCF dismissed the disciplinary action against Plaintiff, restored all of his good time, and gave Plaintiff his money back. They did not compensate Plaintiff for the time he spent in segregation or the time he spent on privileged restriction. Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.

---

[4] Under 28 U.S.C. § 1915A, district courts must "screen" pro se prisoner complaints and dismiss those claims that are legally "frivolous, malicious, . . . fail[] to state a claim," or that "seek[] monetary relief from a defendant who is immune from such relief." *Id*. § 1915A(b).

6

*Id.* The court also denied Mr. Jamerson's motion to amend his complaint. Mr. Jamerson filed a timely notice of appeal.

## II.  DISCUSSION

On appeal, Mr. Jamerson argues the district court erred by (1) denying his motion to appoint counsel, (2) dismissing his complaint for failure to state a claim, and (3) denying his motion to amend his complaint.

### A.  *Motion to Appoint Counsel*

We review the denial of a motion to appoint counsel for abuse of discretion. *See Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006). We consider:  (1) the merits of the claims, (2) the factual issues, (3) the litigant's ability to present the claims, and (4) the complexity of the legal issues. *See id.* at 1224.

The district court properly considered these factors, concluding "(1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments." ROA at 204-05. We have reviewed the record and Mr. Jamerson's arguments and find no abuse of discretion in the district court's analysis or conclusion.

### B.  *Failure to State a Claim*

We affirm the district court's dismissal of Count One but reverse its dismissal of Counts Two and Three.

7

1. **Standard of Review and Legal Background**

We review de novo a district court's sua sponte dismissal of a complaint under 28 U.S.C. § 1915(e) for failure to state a claim, applying the same standard that we employ for dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). To survive dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing a complaint's plausibility, "we accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield*, 826 F.3d at 1255. A district court may dismiss a complaint sua sponte under § 1915A(b)(1) based on an affirmative defense such as the statute of limitations when "the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quotations omitted).

Because Mr. Jamerson is proceeding pro se, we construe his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[T]his rule of liberal construction stops, however, at the point at which we begin to serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

2. **Analysis**

   a. *Count One: Failure to Protect*

We affirm the district court's dismissal of Count One. "The forum state's statute of limitations for personal injury actions governs civil rights claims under . . . [42 U.S.C.] § 1983." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188

8

(10th Cir. 2006). Here, Kansas law sets the limitations period at two years. *Id.* (citing Kan. Stat. Ann. § 60-513(a)). Kansas law also provides the tolling rules for this action. *See Wallace v. Kato*, 549 U.S. 384, 394-95 (2007) (explaining that state tolling rules apply to § 1983 claims).

The accrual date of a § 1983 action, however, "is a question of federal law that is *not* resolved by reference to state law." *Id.* at 388. Under federal law, a plaintiff's claim accrues when he has a complete and present cause of action. *Id.* In general, this occurs "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993).

A "failure to protect" claim under the Eighth Amendment requires that an inmate show (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official has "a sufficiently culpable state of mind,"—one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotations omitted).

Mr. Jamerson's failure-to-protect claim alleged that on June 16, 2010, a KDOC official warned Mr. Jamerson that another inmate wanted to kill him, and that the altercation occurred three days later. Thus, Mr. Jamerson was aware of the prison official's mental state and the altercation as of June 19, 2010. He has not contended that he needed any additional facts to support his claim. Nor has he given any reason that equitable tolling would be appropriate. The two-year statute of limitations therefore ran in June 2012, long before he filed his complaint on November 22, 2017. The district court correctly dismissed Count One as time-barred.

9

b.  *Counts Two and Three:  False Disciplinary Claims and Segregation*

The district court ordered Mr. Jamerson to "show good cause why his Complaint . . . should not be dismissed as barred by the statute of limitations."  ROA at 205.  In its final dismissal order, however, the district court did not rely on the statute of limitations to dismiss Counts Two and Three, and it did not address equitable tolling. Instead, it dismissed the counts under 42 U.S.C. § 1997e(e), which provides that no inmate may bring a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The court did not address whether amendment of the complaint would be futile.

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).  "[T]he district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."  *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (permitting sua sponte dismissals under § 1915A when district court has "considered whether amendment would be futile"); *see also Smith v. Cummings*, 445 F.3d 1254, 1261 (10th Cir. 2006) (sua sponte dismissal can constitute "procedural error" when claim was not frivolous and plaintiff "had no opportunity to respond to the district court's concern").

The district court's show-cause order did not mention 28 U.S.C. § 1997e(e) or its physical-injury requirement.  *See* ROA at 199-205.  The order focused solely on the

10

statute of limitations. *Id.* As a result, Mr. Jamerson addressed the statute-of-limitations issue in his response to the show-cause order, including a discussion about equitable tolling. But he did not learn of the court's § 1997e(e) concerns until his claims had been dismissed.

Mr. Jamerson's district court filings suggest he may be able to amend his complaint to address the district court's § 1997e(e) concerns. In his motion to add the tort of outrage to his complaint, Mr. Jamerson alleged that he suffered self-harm, panic attacks, respiratory problems, head injuries, and severe mental issues as a result of his time in segregation. *Id.* at 197-98. In addition, a newspaper article attached to Mr. Jamerson's Supplemental Memorandum of Law reported that, while in segregation for the false OSR classification:

> [Mr. Jamerson's] mental health was slipping. Unknown voices began talking to him. During a panic attack, he split his head open on a desk. During another, he choked, requiring CPR. He would wake up in the middle of the night screaming. He was given medication to ease his anxiety, personality disorder, and obsessive-compulsive behavior, all of which he developed, he says, while in solitary confinement.[5]

---

[5] Mr. Jamerson's motions to submit evidence contain formal prison grievances corroborating the newspaper's account of his alleged injuries. *See* ROA at 112-33, 189-95. Mr. Jamerson's grievances detail his mental instability, problems with psychiatric medications, hallucinations, prescribed therapy sessions, and head injuries that resulted from his solitary confinement. *Id.* at 112-33. As Mr. Jameson put it: "I am a mental health level 4. Meaning I am pretty messed up and on alot [sic] of meds. Thanks to KDOC holding me in seg[regation] for 5yrs 3mo on falsified documents . . . ." *Id.* at 130.

11

*Id.* at 46. In another attachment to his Supplemental Memorandum, Mr. Jamerson included a formal prison grievance form in which he complained that his "eyes are very sensitive to light due to the fact I sat in seg[regation] with out [sic] direct sun light for 5yrs 3mo for a situation I did not do [sic]." *Id.* at 79-80.

Mr. Jamerson's district court filings suggest he may be able to amend his complaint to allege sufficient physical, mental, and emotional injuries as a result of Defendants' actions. *See* 42 U.S.C. § 1997e(e).[6] We cannot conclude that "it would be futile to give him an opportunity to amend." *Perkins*, 165 F.3d at 806.

We therefore reverse the district court's dismissal of Counts Two and Three and remand. To the extent the court continues on remand to rely on 42 U.S.C. § 1997e(e) to test the sufficiency of the complaint, it should afford Mr. Jamerson an opportunity to file an amended complaint. But the court may choose to follow a different course. As previously recounted, to reach its dismissal ruling based on § 1997e(e), the court assumed without deciding that Mr. Jamerson was entitled to equitable tolling. *See* ROA at 211 ("Even if Plaintiff could successfully argue for equitable tolling regarding his remaining claims, Plaintiff has failed to state a plausible claim for relief."). Nothing in what we have said here would preclude the court from addressing equitable tolling as a potential ground to resolve this case. Moreover, it would need to address equitable tolling if Mr. Jamerson files an amended complaint that satisfies the court's concerns about § 1997e(e).

---

[6] We consider Mr. Jamerson's filings not to analyze the sufficiency of the complaint but only to assess whether amendment would be futile. *See Perkins*, 165 F.3d at 806.

C. *Motion to Amend Complaint*

We vacate the district court's denial of Mr. Jamerson's motion to amend the complaint to add the state law tort of outrage. The court denied the motion without explanation. To the extent it did so because it had dismissed the federal claims, and in light of our remand of Counts Two and Three, the district court should reconsider Mr. Jamerson's request to add his state law claim depending on the court's resolution of the other issues on remand.

## III. **CONCLUSION**

We (1) grant Mr. Jamerson's motion to proceed *ifp*, (2) affirm denial of the motion to appoint counsel, (3) affirm dismissal of Count One of the complaint, (4) reverse dismissal of Counts Two and Three, (5) vacate denial of the motion to amend, and (6) remand for further proceedings consistent with this order and judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

13