FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 22, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CHARLES KENZELL CARTER,

    Plaintiff - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS; WYOMING
DEPARTMENT OF CORRECTIONS
CLASSIFICATION AND HOUSING
MANAGER; CARL
VOIGTSBERGER, individually;
WYOMING DEPARTMENT OF
CORRECTIONS DIRECTOR; DAN
SHANNON, individually,

    Defendants - Appellees.

No. 23-8044
(D.C. No. 1:23-CV-00021-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

---

[*]     Oral argument would not help us decide the appeal, so we have decided the appeal based on the record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

This case arose from the transfer of an inmate, Mr. Charles Kenzell Carter, from Wyoming to Virginia. Mr. Carter sued the Wyoming Department of Corrections and two officials (Mr. Carl Voigstberger and Mr. Dan Shannon). The district court summarily dismissed the action on grounds that it was frivolous and failed to state a claim on which relief could be granted, and Mr. Carter appeals.

On appeal, he contends that

- prison authorities improperly removed good-time credits,

- summary dismissal impinged on the right to court access,

- he suffered unequal treatment in comparison to Caucasian inmates in Wyoming,

- the transfer to Virginia stemmed from retaliation,

- continued confinement in administrative segregation violated the right to due process, and

- the district court was biased.

We conclude that the district court erred in dismissing the retaliation claim, but reject Mr. Carter's other appellate contentions.

First, Mr. Carter challenges the removal of his good-time credits. The district court rejected this challenge because Mr. Carter had sued under 42 U.S.C. § 1983. The court distinguished between civil suits under 42 U.S.C. § 1983 and habeas actions, explaining that a habeas petition was required because removal of the credits had lengthened Mr. Carter's

confinement. *See Carter v. Wyoming Dep't of Corr.,* No 2:23-CV-00021-SWS, 2023 WL 4339466, at *7 (D. Wyo. June 12, 2023). Mr. Carter doesn't question this explanation, so we can't disturb this part of the ruling. *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (stating that an appellant must "explain what was wrong with the reasoning that the district court relied on in reaching its decision").[1]

Second, Mr. Carter claims that summary dismissal impinged on his constitutional right to court access. Under federal law, the district court had to screen the complaint because Mr. Carter was proceeding in forma pauperis, suing government officials, and claiming deficient conditions in prison. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1). We have held that screening of prisoner complaints does not violate the Constitution's right to court access. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("[S]ua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe upon the right of access to the courts.").[2]

---

[1]    Mr. Carter's pro se status doesn't relieve him of the obligation to identify an error in the district court's reasoning. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal quotation marks omitted)).

[2]    In *Curley*, we addressed the constitutionality of 28 U.S.C. § 1915(e)(2). 246 F.3d at 1283. This section is virtually identical to sections 1915A(b)(1) and 1997e(c)(1).

Third, Mr. Carter alleges a denial of equal protection because his treatment was poorer than that received by Caucasian inmates housed in Wyoming. The district court dismissed this claim, reasoning that

- Mr. Carter hadn't identified inmates getting better treatment or explained how they were similarly situated,

- the allegations in his complaint didn't have enough detail,

- Mr. Carter hadn't pleaded facts showing a discriminatory purpose, and

- Mr. Carter hadn't adequately pleaded discriminatory treatment.

Again, Mr. Carter hasn't addressed the district court's reasoning; so we can't disturb the ruling on this claim.

Fourth, Mr. Carter claims retaliatory transfer, alleging that

- he filed grievances in July 2019 for mistreatment by prison officials,

- he was soon subjected to a "compassionate transfer" to a Virginia prison, and

- the transfer did not meet the qualifications for a compassionate transfer under Wyoming regulations because Mr. Carter did not pay for the transfer.

R. vol. 1, at 5, 43–44. Mr. Carter asserts that the transfer to Virginia constituted retaliation for his filing of the grievances. *Id.* But the district court did not address this assertion.

Adverse actions taken in retaliation for a prisoner's filing of grievances may violate the First Amendment. *See Williams v. Meese*, 926

F.2d 994, 998 (10th Cir. 1991). To withstand dismissal, the prisoner must allege specific facts demonstrating a retaliatory motive and but-for causation. *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1991). Circumstantial evidence—like temporal proximity between the grievances and the transfer—may support a claim of retaliation. *See id.* at 949 (holding that an inmate's allegations of retaliation were sufficiently supported by the "only means available to him—circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by defendants of blocking his access to legal materials and assistance").

We conclude that Mr. Carter has adequately alleged three facts that could create liability for a retaliatory transfer:

1. activity protected by the First Amendment (the filing of grievances),

2. transfer to Virginia soon after Mr. Carter had filed the grievances, and

3. invalidity of the explanation for the transfer.

R. vol. 1, at 5. Given these allegations, the district court erred in dismissing this claim based on frivolousness and failure to state a valid claim. *See Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (stating that if prison officials had retaliated against a prisoner based on his filing of administrative grievances, the officials could incur liability for a constitutional violation).

5

Fifth, Mr. Carter argues that the defendants failed to comply with Wyoming policies requiring periodic review of a prisoner's placement in administrative segregation. The district court rejected this argument on the ground that a failure to comply with Wyoming policies did not establish a constitutional violation. *See Carter v. Wyoming Dep't of Corr.,* No 2:23-CV-00021-SWS, 2023 WL 4339466, at *6 (D. Wyo. June 12, 2023) (discussing Mr. Carter's "mistaken belief that [Wyoming Department of Corrections policies] are equivalent to statutes, the Constitution, and are the law").

In his appellate brief, Mr. Carter doesn't challenge the district court's reasoning. He instead repeats his argument that the defendants violated Wyoming regulations. Mr. Carter doesn't explain how the alleged regulatory violations would have amounted to a denial of due process.

Prison conditions that "'impose [] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' may create a liberty interest protected by the Due Process Clause." *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In some circumstances, placement in administrative segregation may impose an "atypical and significant hardship" warranting periodic review of an inmate's placement. *See Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012) (stating that "administrative segregation may not be used as a pretext for indefinite confinement of an

6

inmate" and that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates" (quoting *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 483)). The required review "must be meaningful; it cannot be a sham or a pretext." *Id.*

Mr. Carter doesn't contend that prison officials failed to provide meaningful review of his administrative placement while he was housed in Virginia. He argues only that Wyoming officials failed to comply with regulations involving review of administrative placements. So the district court properly dismissed this claim.

Sixth, Mr. Carter doesn't justify reversal based on judicial bias. "Under [Fed. R. App. P. 28], which applies equally to pro se litigants, a brief must contain more than a generalized assertion of error." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (ellipsis and internal quotation marks omitted). On the issue of bias, Mr. Carter's brief contains only a generalized assertion, without any reasoning or support. So we do not consider this assertion any further.

Finally, Mr. Carter criticizes the district court's characterization of prior dismissals. When there are three or more dismissals for frivolousness or failure to state a valid claim, prisoners bear a heightened burden before they can avoid prepayment of the filing fee in future actions. 28 U.S.C. § 1915(g). The district court said that some of the prior dismissals

qualified; Mr. Carter disagrees on the ground that some of the dismissals were without prejudice.

We need not address the classification of the prior dismissals. But we note that the heightened burden may arise even when the prior dismissals are without prejudice. *See Childs v. Miller*, 713 F.3d 1262, 1266 (10th Cir. 2013).

* * *

We affirm the district court's ruling in part and reverse in part. We remand Mr. Carter's retaliation claim for further proceedings consistent with this order and judgment.[3]

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

[3]    Mr. Carter also seeks leave to proceed in forma pauperis. We grant leave because Mr. Carter cannot afford to prepay the filing fee. Mr. Carter must continue making partial payments until the filing fee is paid in full.

8